IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| OLD GUARD INSURANCE COMPANY, | ) | |
| and WESTFIELD CHAMPION | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  23-cv-2846 |
| | ) | |
| JOHN BAYS, BAYS MOTORS, INC., | ) | |
| ANOSHA JAWAID, JOSEPH KILAR, | ) | |
| and BARBARA KILAR, | ) | |
| | ) | |
| Defendants. | ) | |

<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiffs, Westfield Insurance Company, ("Westfield"), Old Guard Insurance Company,

("Old Guard"), and Westfield Champion Insurance Company, ("Westfield Champion"), by their

attorneys, Esp Kreuzer Cores LLP, pursuant to 28 U.S.C. 2201 and 2202, for their Complaint for

Declaratory Judgment against Defendants, John Bays; Bays Motors, Inc.; Anosha Jawaid; Joseph

Kilar; and Barbara Kilar states:

I.  THE PARTIES

1.     Westfield is an Ohio corporation, with its principal place of business in Westfield

Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies of

insurance in the State of Illinois and issued a certain commercial general liability policy to its

named insured, John Bays as detailed herein.

2.     Old Guard is a Pennsylvania corporation, with its principal place of business in

Westfield Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies

of insurance in the State of Illinois and issued a certain commercial general liability policy to its

named insured, John V. Bays as detailed herein.

3.      Upon information and belief, Defendant John V. Bays, a/k/a John Bays or Dr John Bays, ("John Bays"), is an individual who resides, and at all times relevant herein has resided, in Joliet, Illinois.

4.      Upon information and belief, on November 30, 1994, Defendant John Bays formed Defendant Bays Motors, Inc., an Illinois corporation, and Defendant Bays Motors, Inc.'s principal place of business in now in Joliet, Illinois.

5.      Upon information and belief, Defendant Anosha Jawaid is an individual who resides, and at all times relevant herein has resided, in Homer Glen, Illinois.

6.      Upon information and belief, Defendant Joseph Kilar is an individual who resides, and at all times relevant herein has resided, in Illinois.

7.      Upon information and belief, Defendant Barbara Kilar is an individual who resides, and at all times relevant herein has resided, in Illinois.

## II. JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Westfield is a citizen of the State of Ohio. Upon information and belief, John V. Bays; Bays Motors, Inc.; Anosha Jawaid; Joseph Kilar; and Barbara Kilar are all citizens of the State of Illinois.

9.      Venue of this action in the Eastern Division of the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because Westfield issued the liability policy to John Bays, an individual, at 3077 W. Jefferson Street, Suite 100, Joliet, Illinois, the underlying incidents took place within Cook County and DuPage County, and the underlying lawsuit is pending

in Cook County, Illinois.

### III.  THE UNDERLYING AMENDED COMPLAINT

10.     On March 20, 2023, Joseph Kilar and Barbara Kilar, filed an underlying amended complaint against multiple defendants, seeking to recover for bodily injuries and property damage allegedly sustained on July 22, 2022, when Anosha Jawaid, consciously and willfully disregarded the life and safety of others by entering a 2013 Mercedes, located at Busse Woods Trail in Cook County, by driving while intoxicated southbound on I-355 from Busse Trails past mile marker 26, and by striking the rear-end of Joseph Kilar and Barbara Kilar's 2015 Subaru Forester in DuPage County, just north of Illinois Route 38 (Roosevelt Road) at a high rate of speed. Westfield filed a copy of the underlying amended complaint as (Dkt. 1-2). See also an interactive tollway milepost map available at https://www.illinoistollway.com/travel-information/maps.

11.     The underlying amended complaint alleges that Anosha Jawaid had a history of consciously disregarding the life and safety of others while she operated motor vehicles. (Dkt. 1-2 at 14¶113).

12.     The underlying amended complaint alleges that on June 22, 2022, Anosha Jawaid operated a vehicle in Romeoville, Illinois while under the influence of alcohol. (Dkt. 1-2 at 4¶27, 6¶39, 6¶44).

13.     The underlying amended complaint alleges that on July 22, 2022, Bays Motors, Inc. was the owner of the 2013 Mercedes. (Dkt. 1-2 at 4¶21).

14.     The underlying amended complaint alleges that on July 22, 2022, John Bays was the president and secretary of Bays Motors, Inc. (Dkt. 1-2 at 3¶18).

15.     The underlying amended complaint alleges that at all relevant times, John Bays had complete control of the operations of Bays Motors, Inc. (Dkt. 1-2 at 31¶215).

16.     The underlying amended complaint alleges that at all relevant times, Bays Motors, Inc. was the alter ego of John Bays. (Dkt. 1-2 at 31¶216).

17.     The underlying amended complaint alleges that John Bays and Anosha Jawaid had a personal relationship between January of 2022 and the time of the July 22, 2022 incident and on occasion spent the night together at a residence located in Homer Glen, Illinois. (Dkt. 1-2 at 4¶¶22-26, 6¶40).

18.     The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's prior misconduct. (Dkt. 1-2 at 6¶¶39-45).

19.     The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of operating motor vehicles while intoxicated. (Dkt. 1-2 at 16¶122).

20.     The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of driving motor vehicles recklessly. (Dkt. 1-2 at 16¶122).

21.     The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of operating motor vehicles in a manner that endangered the lives and safety of the public. (Dkt. 1-2 at 16¶122).

22.     The underlying amended complaint alleges that despite knowledge of Anosha Jawaid's misconduct, on and before July 22, 2022, Bays Motors, Inc. and John Bays (individually and as an agent of Bays Motors, Inc.) authorized Anosha Jawai to drive the 2013 Mercedes. (Dkt. 1-2 at 3¶16, 6¶¶39-45, 14¶117, 16¶122, 27¶198, 28¶203, 31¶214).

23.     The underlying amended complaint alleges that on July 22, 2022, prior to the time of the collision, Anosha Jawaid had no fewer than ten (10) phone calls with John Bays. (Dkt. 1-2 at

7¶49).

24.     The underlying amended complaint alleges that despite knowledge of Anosha Jawaid's misconduct, on and before July 22, 2022, John Bays (individually and as an agent of Bays Motors, Inc.): a) failed to instruct Anosha Jawaid to not drive after drinking; b) failed to arrange for Anosha Jawaid to take a cab or rideshare to her next destination; c) failed to pick up Anosha Jawaid from the location where she was intoxicated; and/or d) failed to intervene in Anosha Jawaid's plan to drive while intoxicated. (Dkt. 1-2 at 6¶¶39-45, 14¶117, 16¶122, 18¶128, 27¶198, 28¶203, 30¶209).

25.     The underlying amended complaint further alleges that on the night of July 22, 2022, John Bays had notice that Anosha Jawaid caused the crash. (Dkt. 1-2 at 19¶140).

26.     The underlying amended complaint alleges that on the night of July 22, 2022, John Byas knew that litigation would ensue for losses arising out of the crash. (Dkt. 1-2 19¶¶141-142).

27.     The underlying amended complaint alleges that on and after July 22, 2022, John Bays owed a duty to preserve evidence for the ensuing litigation. (Dkt. 1-2 at 20¶¶141-147).

28.     The underlying amended complaint alleges that shortly after the crash, Plaintiffs served John Bays with letters demanding preservation of evidence relating to the July 22, 2022 DUI crash including "*any and all messages, text messages, emails, call logs, voice messages, what's app messages, signal messages, and/or any other correspondence or messages with Anosha Jawaid from July 22, 2022 through present, any and all bar receipts, tabs, or other invoices from restaurants and/or bars on July 22, 2022, any and/or all photographs, videos, social media posts depicting you or Anosha Jawaid on July 22, 2022, and/or any other tangible things that in anyway relate to the Anosha Jawaid's whereabouts, conduct, intoxication, and/or ability to operate a vehicle on July 22, 2022.*" (Dkt. 1-2 at 8¶64)(The underlying amended complaint adding emphasis.).

29.     The underlying amended complaint alleges that the same letter demanded John Bays preserve evidence relating to the June 21, 2022 crash including "any and all text messages, emails, whatsapp messages, signal messages, and/or any other communications that in anyway reference Anosha Jawaid's recent charges, arrest, and case regarding her June 22, 2022 operation of a vehicle while allegedly under the influence in Will County." (Dkt. 1-2 at 8¶65).

30.     The underlying amended complaint alleges that within one (1) month the crash, Joseph and Barbara Kilar caused John Bays to be served summons and an underlying complaint that identified John Bays as a Respondent in Discovery.  (Dkt. 1-2 at 8¶66, 20¶144).

31.     The underlying amended complaint alleges that John Bays actively deleted messages that were the subject of preservation requests. (Dkt. 1-2 at 8¶68).

32.     The underlying amended complaint alleges that John Bays, as a respondent in discovery, produced nothing. (Dkt. 1-2 at 20¶145).

## IV.  THE WESTFIELD COMMERCIAL PACKAGE POLICY

33.     Westfield issued a commercial package policy to John Bays, policy number CWP 5 921 393, effective March 15, 2022 to March 15, 2023. Westfield filed a copy of the commercial package policy as (Dkt. 1-3).

34.     The Westfield common policy declarations of the commercial package policy identify John Bays as an "Individual." (Dkt. 1-3 at 12).

35.     The Westfield common policy declarations identify John Bays's business as "Building Owner." (Dkt. 1-3 at 12).

36.     The Westfield commercial general liability declarations state that the "Location Of All Premises Owned By, Rented To Or Controlled By The Named Insured Are The Same As The Mailing Address Of The Policy Declarations Unless Otherwise Indicated." (Dkt. 1-3 at 69).

37.     A building related classification code on the Westfield commercial general liability declarations identifies the location "211 N Scott St Joliet IL 60432." (Dkt. 1-3 at 69).

38.     A parking related classification code on the Westfield commercial general liability declarations identifies the location "17 E Cass St Joliet IL 60432." (Dkt. 1-3 at 69).

39.     The Westfield CGL has a limit of liability of $1 million each "occurrence" and $2 million in the aggregate. (Dkt. 1-3 at 68).

40.     The top of the first page of the Westfield CGL Coverage Form reads in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt 1-3 at 72).

41.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield CGL reads in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. ***

   b. This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

**(2)** The "bodily injury" or "property damage" occurs during the policy period; ***

(Dkt. 1-3 at 72).

42.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the

Westfield CGL reads in part:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that

party's defense has also been assumed in the same "insured contract;" and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured. \* \* \*

(Dkt. 1-3 at 73-75).

43. "Coverage B – Personal and Advertising Injury Liability" of Section I of the Westfield CGL reads in part:

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during

the policy period.

(Dkt. 1-3 at 77).

44.     Section II – Who Is An Insured of the Westfield CGL reads in part:

**1.** If you are designated in the Declarations as: * * *

    **a.**  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However: a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. * * *

(Dkt. 1-3 at 80-81).

45.     Section IV of the Westfield CGL reads in part:

**2.   Duties In The Event Of Occurrence, Offense, Claim or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising." * * *

    **c.**  You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**b. Primary insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**c. Excess Insurance**

**(1)** This insurance is excess over:
**(a)** Any of the other insurance, whether primary, excess, contingent, or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you

covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.

\*       \*       \*

(4)     We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.       \*       \*       \*

(6)     **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

(Dkt. 1-3 at 82-84).

46.     Section V of the Westfield CGL reads in part:

**SECTION V – DEFINITIONS**

\*       \*       \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or

organization's goods, products or services;

    **e.** Oral or written publication of material that violates a person's rights of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Dkt. 1-3 at 86).

47.    The schedule of underlying insurance for the Westfield commercial liability umbrella declarations only identifies the general liability coverage, policy number CWP 5921393. (Dkt. 1-3 at 103).

48.    The Westfield Umbrella has a limit of liability of $2 million each "occurrence" and $2 million in the aggregate. (Dkt. 1-3 at 103).

49.    The top of the first page of the Westfield Umbrella reads in part:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt 1-3 at 104).

50.    "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield Umbrella reads in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ***

(Dkt. 1-3 at 104).

    51.    "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the

Westfield Umbrella reads in part:

    **2. Exclusions**

    This insurance does not apply to:

    **a. Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

    **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the

contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*     \*     \*

**f. Auto Coverages**

(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance, or use of any "auto" which is not a "covered auto"; or

(2) Any loss, costs or expense payable under or resulting from any first-party physical damage coverage; no-fault law, personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

(Dkt. 1-3 at 105-106).

52.     "Coverage B – Personal and Advertising Injury Liability" of Section I of the Westfield Umbrella reads in part:

**1.  Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may

15

apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply * * *

**b.** This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. 1-3 at 109-110).

53. Section II – Who Is An Insured of the Westfield Umbrella reads in part:

1. Except for liability arising out of the ownership, maintenance or use of "covered autos":
   **a.** If you are designated in the Declarations as: * * *

   (1) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. * * *
   **c.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However: (1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. * * *

(Dkt. 1-3 at 113-114).

54. Section IV of the Westfield Umbrella reads in part:

**3. Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which

may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising." * * *

**c.** You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

bNo insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part. * * *

**7. Representations Of Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;
**b.** Those statements are based upon representations you made to us;
**c.** We have issued this policy in reliance upon your representations; and
**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

(Dkt. 1-3 at 116-117).

55. Section V of the Westfield Umbrella reads in part:

**SECTION V – DEFINITIONS**

* * *

17

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication of material that violates a person's rights of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Dkt. 1-3 at 120).

56. There is no language within the Westfield commercial package policy identifying Bays Motors, Inc. as a named insured. (Dkt. 1-3).

57. John Bays did not disclose Bays Motors, Inc. on the application for insurance that John Bays submitted to Westfield.

58. John Bays never applied to list Bays Motors, Inc. in the Westfield commercial package policy.

59. John Bays never sought coverage for Bays Motors, Inc.'s operations under the Westfield commercial package policy.

## THE OLD GUARD COMMERCIAL PACKAGE POLICY

60.     Old Guard issued a commercial package policy to John V. Bays, policy number CWP 222470R, effective April 10, 2022 to April 10, 2023, which on September 12, 2022 was cancelled. Old Guard filed a copy of the commercial package policy as (Dkt. 1-4).

61.     The Old Guard common policy declarations amended identify John V. Bays's business as "Office." (Dkt. 1-4 at 279).

62.     Endorsement 70 31 05 18, titled "Schedule of Named Insured," of the Old Guard policy reads in part: John V Bays. (Dkt. 1-4 at 39).

63.     The Old Guard commercial general liability declarations state that the "Location Of All Premises Owned By, Rented To Or Controlled By The Named Insured Are The Same As The Mailing Address Of The Policy Declarations Unless Otherwise Indicated." (Dkt. 1-4 at 19).

64.     A "warehouse – private – not-for-profit only" related classification code on the Old Guard commercial general liability declarations identifies the location "23090 W Eames St, Channahon, IL 60410-3149." (Dkt. 1-4 at 69).

65.     A "Buildings or Premises – bank of office – mercantile or manufacturing (lessor's risk only) – other than non-for-profit" related classification code on the Old Guard commercial general liability declarations identifies the location "23090 W Eames St, Channahon, IL 60410-3149." (Dkt. 1-4 at 69).

66.     A "Buildings or Premises – bank of office – mercantile or manufacturing (lessor's risk only) – other than non-for-profit" related classification code on the Old Guard commercial general liability declarations identifies the location "23038 & 23042 W Eames St, Channahon, IL 60410." (Dkt. 1-4 at 69).

67.     The Old Guard CGL has a limit of liability of $2 million each "occurrence" and $4 million in the aggregate. (Dkt. 1-4 at 18).

68.     The top of the first page of the Old Guard CGL Coverage Form reads in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt 1-4 at 137).

69.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Old Guard CGL reads in part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. ***
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
>>
>> **(2)** The "bodily injury" or "property damage" occurs during the policy period; ***

(Dkt. 1-4 at 137).

70.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the

Old Guard CGL reads in part:

### 2.  Exclusions

This insurance does not apply to:

### a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.

### b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*       *       *

21

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured. * * *

(Dkt. 1-4 at 138-140).

71.     "Coverage B – Personal and Advertising Injury Liability" of Section I of the Old Guard CGL reads in part:

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. 1-4 at 142).

72.     Section II – Who Is An Insured of the Old Guard CGL reads in part:

**1.** If you are designated in the Declarations as: * * *

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. * * *

**3.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However: a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. * * *

(Dkt. 1-4 at 145-146).

73.     Section IV of the Old Guard CGL reads in part:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising." * * *

**c.** You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage

A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent, or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.

\*        \*        \*

**(4)** We will share the remaining loss, if any, with any

other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.     *     *     *

**6. Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

(Dkt. 1-4 at 149).

74.    Section V of the Old Guard CGL reads in part:

**SECTION V – DEFINITIONS**

           *     *     *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**   "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication of material that violates a person's rights of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Dkt. 1-4 at 151).

75.     There is no language within the Old Guard commercial package policy identifying Bays Motors, Inc. as a named insured. (Dkt. 1-4).

76.     John Bays did not disclose Bays Motors, Inc. on the application for insurance that John Bays submitted to Old Guard.

77.     John Bays never applied to list Bays Motors, Inc. in the Old Guard commercial package policy.

78.     John Bays never sought coverage for Bays Motors, Inc.'s operations under the Old Guard commercial package policy.

<u>THE WESTFIELD CHAMPION COMMERCIAL PACKAGE POLICY</u>

79.     Westfield Champion issued a commercial package policy to John Bays, policy number 212562Y, effective March 1, 2022 to March 1, 2023. Westfield Champion filed a copy of the commercial package policy as (Dkt. 1-5).

80.     The Westfield Champion common policy declarations identify John Bays's business as "Service." (Dkt. 1-5 at 11).

81.     Endorsement IL DS 02 05 18, titled "Schedule of Insured Locations," of the Westfield Champion policy reads: "1601-1619 W Jefferson St Joliet, IL 60435." (Dkt. 1-5 at 13).

82.     The Westfield Champion commercial general liability declarations state that the "Location of all premises owned by, rented to or controlled by the named insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated." (Dkt. 1-5 at 20).

83.     A parking – public – shopping centers – maintained by the insured (lessor's risk only) classification code on the Westfield Champion commercial general liability declarations

identifies the location "1601-1619 W Jefferson St, Joliet, IL 60435." (Dkt. 1-5 at 20).

84.     A shopping centers – buildings, or premises not occupied by the insured (lessor's risk only) classification code on the Westfield Champion commercial general liability declarations identifies the location "1601-1619 W Jefferson St, Joliet, IL 60435." (Dkt. 1-5 at 20).

85.     The Westfield Champion CGL has a limit of liability of $1 million each "occurrence" and $2 million in the aggregate. (Dkt. 1-5 at 19).

86.     The top of the first page of the Westfield Champion CGL Coverage Form reads in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt. 1-5 at 154).

87.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield Champion CGL reads in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. ***

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

**(2)** The "bodily injury" or "property damage" occurs during the policy period; ***

(Dkt. 1-5 at 72).

88. Endorsement GG 21 44 04 17, titled "Limitation of Coverage To Designated Premises, Project or Operation," of the Westfield Champion CGL reads in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABLITY COVERAGE PART

SCHEDULE

| |
|---|
| Premises: <br> 1601-1619 W Jefferson St, Joliet, IL 60435, 1601-1619 W Jefferson St, Joliet, IL 60435 |
| Project of Operation: |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

 **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or

"property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. * * *

(Dkt. 1-5 at 188).

89.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the

Westfield Champion CGL reads in part:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured. \* \* \*

(Dkt. 1-5 at 155-157).

90.     "Coverage B – Personal and Advertising Injury Liability" of Section I of the

Westfield Champion CGL reads in part:

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. 1-5 at 159).

91.     Endorsement GG 21 44 04 17, titled "Limitation of Coverage To Designated

Premises, Project or Operation," of the Westfield Champion CGL further reads in part:

> **2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:
> **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:
> **(1)** The offense arises out of your business:
> **(a)** Performed on the premises shown in the Schedule; or
> **(b)** In connection with the project or operation shown in the Schedule; and
> **(2)** The offense was committed during the policy period. However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:
> **(1)** False arrest, detention or imprisonment; or
> **(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

(Dkt. 1-5 at 188-189).

92.     Section II – Who Is An Insured of the Westfield Champion CGL reads in part:

> **1.** If you are designated in the Declarations as: * * *
>
>     **a.**   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. * * *
> **3.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However: a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. * * *

(Dkt. 1-5 at 162-163).

93.     Section IV of the Westfield Champion CGL reads in part:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising." * * *

**c.** You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**a.  Primary insurance**

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

**(1)** This insurance is excess over:

  **(a)** Any of the other insurance, whether primary, excess, contingent, or on any other basis:

  **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

  **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

  **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

  **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

  **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.

*    *    *

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.   *    *    *

**(6)** **Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

(Dkt. 1-5 at 164-166).

94.     Section V of the Westfield Champion CGL reads in part:

**SECTION V – DEFINITIONS**

\*          \*          \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication of material that violates a person's rights of privacy;

f.   The use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Dkt. 1-5 at 168).

95.     The schedule of underlying insurance for the Westfield Champion commercial liability umbrella declarations only identifies the general liability coverage, policy number 212562Y. (Dkt. 1-5 at 31).

96.     The Westfield Champion Umbrella has a limit of liability of $2 million each "occurrence" and $2 million in the aggregate. (Dkt. 1-5 at 31).

97.    The top of the first page of the Westfield Champion Umbrella reads in part:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt 1-5 at 262).

98.    "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield Champion Umbrella reads in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

      **b.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ***

(Dkt. 1-5 at 262).

99.    "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield Champion Umbrella reads in part:

    **2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a. That the insured would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

i. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and
ii. Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*      \*      \*

**f. Auto Coverages**

(3) "Bodily injury" or "property damage" arising out of the ownership, maintenance, or use of any "auto" which is not a "covered auto"; or

> > (4) Any loss, costs or expense payable under or resulting from any first-party physical damage coverage; no-fault law, personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

(Dkt. 1-5 at 263-264).

100. "Coverage B – Personal and Advertising Injury Liability" of Section I of the Westfield Champion Umbrella reads in part:

> **2. Insuring Agreement**
>
> > **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply * * *
> >
> > **b.** This insurance applies to "personal and advertising injury" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "personal and advertising injury" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".
> >
> > **c.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. 1-5 at 267).

101. Section II – Who Is An Insured of the Westfield Champion Umbrella reads in

part:

> **1.** Except for liability arising out of the ownership, maintenance or use of "covered autos":
> **a.** If you are designated in the Declarations as: * * *
>
> **(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. * * *
> **c.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However: (1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. * * *

(Dkt. 1-5 at 271).

102. Section IV of the Westfield Champion Umbrella reads in part:

> **3. Duties In The Event Of Occurrence, Offense, Claim or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising." * * *
>
> **c.** You and any other involved insured must:
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> (2) Authorize us to obtain records and other information;
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. Other Insurance**

a. This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part. * * *

**7. Representations Of Fraud**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;
**b.** Those statements are based upon representations you made to us;
**c.** We have issued this policy in reliance upon your representations; and
**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

(Dkt. 1-5 at 274).

103.    Section V of the Westfield Champion Umbrella reads in part:

**SECTION V – DEFINITIONS**

*       *       *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or

39

organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's rights of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Dkt. 1-5 at 277).

104. There is no language within the Westfield Champion commercial package policy identifying Bays Motors, Inc. as a named insured. (Dkt. 1-5).

105. John Bays did not disclose Bays Motors, Inc. on the application for insurance that John Bays submitted to Westfield Champion.

106. John Bays never applied to list Bays Motors, Inc. in the Westfield Champion commercial package policy.

107. John Bays never sought coverage for Bays Motors, Inc.'s operations under the Westfield Champion commercial package policy.

## VI. NOTICE TO INSURERS

108. On March 16, 2023, Westfield; Old Guard; and Westfield Champion first received notice of the incident on March 16, 2023.

109. On March 16, 2023, Westfield; Old Guard; and Westfield Champion first received notice that the Kilars made written demands in connection with their claims.

## VI. BASIS FOR RELIEF

### Count I: NO DUTY TO DEFEND OR INDEMNIFY JOHN BAYS UNDER THE WESTFIELD CGL OR UMBRELLA

1-109. Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph

1 through 109 of Count I.

110. For one or more of the following reasons, Westfield owes no duty to defend or indemnify John Bays, under the Westfield CGL or Umbrella, which Westfield pleads in the alternative:

a) Neither the Westfield CGL nor the Umbrella was intended to provide coverage for John Bay's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Building Owner;"

b) The underlying complaint does not allege that John Bay's liability is with respect to the conduct of John Bay's business as "Building Owner" of any location listed on the policy;

c) The terms Section II, titled "Who Is An Insured," of the Westfield CGL or the Umbrella, construed together with the common policy declarations, operate to limit insured status for John Bays to the business of "Building Owner;"

d) John Bays does not have insured status under the Westfield CGL or Umbrella with respect to the conduct of Bays Motor, Inc.'s business operations, where Bays Motors, Inc. is not an organization that John Bays newly acquired;

e) Neither the Westfield CGL nor the Umbrella is intended to provide coverage for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

f) Neither the Westfield CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering

a 2013 Mercedes and driving while intoxicated;

g)  The natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

h)  Entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

i)  Letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

j)  The natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

k)  There are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Westfield CGL or Umbrella uses that term;

l)  "Property damage," as the Westfield CGL or Umbrella uses that term does not mean damage to intangible property or damage to electronic data;

m)  Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or

operated by any insured;

n) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or the Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which neither the Westfield CGL nor the Umbrella was intended to provide coverage;

o) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

p) Without prejudice to the forgoing positions, the "electronic data" exclusion of the Westfield CGL or the Umbrella applies to a situation where John Bays actively deleted messages, resulting in loss of data;

q) The underlying complaint does not set forth allegations against John Bays constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield CGL or Umbrella;

r) Without prejudice to the foregoing positions, Condition 6 of the Westfield CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to

protect against John Bays later misinterpreting that stated business as anything other than "Building Owner;"

s) Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Westfield CGL or the Umbrella, where John Bays knew of the incident, but failed to provide timely notice to Westfield;

t) Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Westfield CGL or the Umbrella, where John Bays' delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

u) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for John Bays, subsection b.(2) of Condition 4 of the Westfield CGL applies to transform the Westfield CGL to a CGL of an excess degree;

v) The schedule of underlying insurance on the Umbrella declarations only identifies the CGL, policy number CWP 5921393;

w) The Umbrella does not impose a duty to defend upon Westfield;

x) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Umbrella;

y) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for John Bays, subsection a. of Condition 5 of the Westfield Umbrella applies to transform the Westfield Umbrella to an Umbrella of an excess degree; and

z) Westfield's investigation is ongoing and Westfield reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to

coverage under the Westfield policy, to the full extent warranted by the facts and permitted by law.

111.     An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Insurance Company owes no duty to defend John Bays against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

## Count II: NO DUTY TO DEFEND OR INDEMNIFY BAYS MOTORS, INC. UNDER THE WESTFIELD CGL OR UMBRELLA

1-109.   Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count II.

110.     For one or more of the following reasons, Westfield owes no duty to defend or indemnify Bays Motors, Inc. under the Westfield CGL or Umbrella, which Westfield pleads in the alternative:

a) Bays Motors, Inc.'s alleged liability falls outside the scope of risks and liabilities for which the Westfield CGL provides coverage;

b) The policy does not identify Bays Motors, Inc. by name as an insured;

c) The terms Section II, titled "Who Is An Insured," of the Westfield CGL or the Umbrella, construed together with the common policy declarations, operate to disqualify Bays Motors, Inc. from having insured status;

d) Bays Motors, Inc. does not qualify as an insured on the Westfield CGL or the

Umbrella because Bays Motors, Inc. is not an organization that John Bays newly acquired;

e)  Bays Motors, Inc. does not qualify as an insured on the Westfield CGL or the Umbrella because Bays Motors, Inc. was not a "volunteer worker," performing duties related to the conduct of John Bays's business of "Building Owner;"

f)  Bays Motors, Inc. does not qualify as an insured on the Westfield CGL or the Umbrella because Bays Motors, Inc. was not an "employee," performing duties related to the conduct of John Bays's business of "Building Owner;"

g)  Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Bays Motors, Inc. upon a judgment being entered against John Bays, and therefore Bays Motors, Inc. does not have insured status;

h)  Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Building Owner;"

i)  Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

j)  Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully

disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

k) Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

l) Without prejudice to the foregoing positions, entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

m) Without prejudice to the foregoing positions, letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

n) Without prejudice to the foregoing positions, the natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

o) Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Westfield CGL or Umbrella uses that term;

p) Without prejudice to the foregoing positions, "property damage," as the Westfield CGL or Umbrella uses that term does not mean damage to intangible property or damage to electronic data;

q) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the

proposition that no coverage exists under the Westfield CGL or Umbrella against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

r) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

s) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

t) Without prejudice to the forgoing positions, the "electronic data" exclusion of the Westfield CGL or the Umbrella applies to a situation where John Bays actively deleted messages, resulting in loss of data;

u) Without prejudice to the foregoing positions, the underlying complaint does not set forth allegations against Bays Motors, Inc. constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield CGL or Umbrella;

v) Without prejudice to the foregoing positions, Condition 6 of the Westfield CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Building Owner;"

w) Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Westfield CGL or Umbrella, where Bays Motors, Inc. failed to provide timely notice of the incident to Westfield;

x) Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Westfield CGL or the Umbrella, where Bays Motor, Inc.'s delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

y) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Bays Motors, Inc., subsection b.(2) of Condition 4 of the Westfield CGL applies to transform the Westfield CGL to a CGL of an excess degree;

z) The schedule of underlying insurance on the Umbrella declarations only identifies the CGL, policy number CWP 5921393;

aa) The Umbrella does not impose a duty to defend upon Westfield;

bb) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Umbrella;

cc) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Bays Motors, Inc., subsection a. of Condition 5 of the

Umbrella applies to transform the Westfield Umbrella to an Umbrella of an excess degree; and

dd) Westfield's investigation is ongoing and Westfield reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Westfield policy, to the full extent warranted by the facts and permitted by law.

111.    An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Insurance Company owes no duty to defend Bays Motors, Inc. against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

Count III: NO DUTY TO DEFEND OR INDEMNIFY ANOSHA JAWAID
UNDER THE WESTFIELD CGL OR UMBRELLA

1-109.    Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count III.

110.    For one or more of the following reasons, Westfield owes no duty to defend or indemnify Anosha Jawaid under the CGL or Umbrella, which Westfield pleads in the alternative:

a)    Anosha Jawaid's alleged liability falls outside the scope of risks and liabilities for which the Westfield CGL or Umbrella provides coverage;

b)    The policy does not identify Anosha Jawaid by name as an insured;

c)  The terms Section II, titled "Who Is An Insured," of the Westfield CGL or Umbrella, construed together with the common policy declarations, operate to disqualify Anosha Jawaid from having insured status;

d)  Anosha Jawaid does not qualify as an insured on the Westfield CGL or Umbrella because Anosha Jawaid was not a "volunteer worker" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Building Owner;"

e)  Anosha Jawaid does not qualify as an insured on the Westfield CGL or Umbrella because Anosha Jawaid was not an "employee" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Building Owner;"

f)  Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Anosha Jawaid upon a judgment being entered against John Bays, and therefore Anosha Jawaid does not have insured status;

g)  Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Building Owner;"

h)  Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

i)   Without prejudice to the foregoing positions, neither the Westfield CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

j)   Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

k)   Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Westfield CGL or Umbrella uses that term;

l)   Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

m)  Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield CGL or Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

n) Without prejudice to the foregoing positions, the underlying complaint does not set forth allegations against Anosha Jawaid constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield CGL or Umbrella;

o) Without prejudice to the foregoing positions, Condition 6 of the Westfield CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Building Owner;"

p) Without prejudice to the forgoing positions, Anosha Jawaid cannot establish a condition precedent to coverage under the Westfield CGL or the Umbrella, where Anosha Jawaid failed to provide timely notice to Westfield of the incident and the lawsuit;

q) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Anosha Jawaid, subsection b.(2) of Condition 4 of the Westfield CGL applies to transform the Westfield CGL to a CGL of an excess degree;

r) The schedule of underlying insurance on the Umbrella declarations only identifies the CGL, policy number CWP 5921393;

s) The Umbrella does not impose a duty to defend upon Westfield;

t) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Umbrella;

u) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Anosha Jawaid, subsection a. of Condition 5 of the Umbrella

applies to transform the Westfield Umbrella to an Umbrella of an excess degree; and

v) Westfield's investigation is ongoing and Westfield reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Westfield policy, to the full extent warranted by the facts and permitted by law.

111. An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Insurance Company owes no duty to defend Anosha Jawaid against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

Count IV: NO DUTY TO DEFEND OR INDEMNIFY JOHN BAYS
UNDER THE OLD GUARD CGL

1-109. Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count IV.

110. For one or more of the following reasons, Old Guard owes no duty to defend or indemnify John Bays under the Old Guard CGL, which Old Guard pleads in the alternative:

a) The Old Guard CGL was not intended to provide coverage for John Bay's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Office;"

b) The underlying complaint does not allege that John Bay's liability is with respect to the conduct of John Bay's business as "Office" of any location listed on the Old Guard policy;

c) The terms Section II, titled "Who Is An Insured," of the Old Guard CGL, construed together with the common policy declarations, operate to limit insured status for John Bays to the business of "Office;"

d) John Bays does not have insured status under the Old Guard CGL with respect to the conduct of Bays Motor, Inc.'s business operations, where Bays Motors, Inc. is not an organization that John Bays newly acquired;

e) The Old Guard CGL is not intended to provide coverage for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

f) The Old Guard CGL is not intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

g) The natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

h) Entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly,

is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

i) Letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

j) The natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

k) There are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Old Guard CGL uses that term;

l) "Property damage," as the Old Guard CGL uses that term does not mean damage to intangible property or damage to electronic data;

m) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

n) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

o) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Old Guard

CGL, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

p) Without prejudice to the forgoing positions, the "electronic data" exclusion of the Old Guard CGL applies to a situation where John Bays actively deleted messages, resulting in loss of data;

q) The underlying complaint does not set forth allegations against John Bays constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Old Guard CGL;

r) Without prejudice to the foregoing positions, Condition 6 of the Old Guard CGL is an explicit manifestation of the parties' intent to protect against John Bays later misinterpreting that stated business as anything other than "Office;"

aa) Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Old Guard CGL, where John Bays knew of the incident, but failed to provide timely notice to Old Guard;

bb) Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Old Guard CGL, where John Bays' delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

cc) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for John Bays, subsection b.(2) of Condition 4 of the Old Guard

CGL applies to transform the Old Guard CGL to a CGL of an excess degree; and

dd) Old Guard's investigation is ongoing and Old Guard reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Old Guard policy, to the full extent warranted by the facts and permitted by law.

111. An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Old Guard Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Old Guard Insurance Company owes no duty to defend John Bays against the *Kilar* lawsuit under the CGL; 2) awarding Old Guard Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

### Count V: NO DUTY TO DEFEND OR INDEMNIFY BAYS MOTORS, INC.
### UNDER THE OLD GUARD CGL

1-109. Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count V.

110. For one or more of the following reasons, Old Guard owes no duty to defend or indemnify Bays Motors, Inc. under the Old Guard CGL, which Old Guard pleads in the alternative:

a) Bays Motors, Inc.'s alleged liability falls outside the scope of risks and liabilities for which the Old Guard CGL provides coverage;

b) The policy does not identify Bays Motors, Inc. by name as an insured;

c) The terms Section II, titled "Who Is An Insured," of the CGL, construed together

with the common policy declarations, operate to disqualify Bays Motors, Inc. from having insured status;

d) Bays Motors, Inc. does not qualify as an insured on the Old Guard CGL because Bays Motors, Inc. is not an organization that John Bays newly acquired;

e) Bays Motors, Inc. does not qualify as an insured on the Old Guard CGL because Bays Motors, Inc. was not a "volunteer worker," performing duties related to the conduct of John Bays's business of "Office;"

f) Bays Motors, Inc. does not qualify as an insured on the Old Guard CGL because Bays Motors, Inc. was not an "employee," performing duties related to the conduct of John Bays's business of "Office;"

g) Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Bays Motors, Inc. upon a judgment being entered against John Bays, and therefore Bays Motors, Inc. does not have insured status;

h) Without prejudice to the foregoing positions, the Old Guard CGL is not intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Office;"

i) Without prejudice to the foregoing positions, the Old Guard CGL is not intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

j) Without prejudice to the foregoing positions, the Old Guard CGL is not intended

to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

k) Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

l) Without prejudice to the foregoing positions, entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

m) Without prejudice to the foregoing positions, letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

n) Without prejudice to the foregoing positions, the natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

o) Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Old Guard CGL uses that term;

p) Without prejudice to the foregoing positions, "property damage," as the Old Guard CGL uses that term does not mean damage to intangible property or damage to electronic data;

60

q) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

r) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

s) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

t) Without prejudice to the forgoing positions, the "electronic data" exclusion of the Old Guard CGL applies to a situation where John Bays actively deleted messages, resulting in loss of data;

u) Without prejudice to the foregoing positions, the underlying amended complaint does not set forth allegations against Bays Motors, Inc. constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Old Guard CGL;

61

v)  Without prejudice to the foregoing positions, Condition 6 of the Old Guard CGL is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Office;"

w)  Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Old Guard CGL, where Bays Motors, Inc. failed to provide timely notice of the incident to Old Guard;

x)  Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Old Guard CGL, where Bays Motors, Inc.'s delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

y)  Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Bays Motors, Inc., subsection b.(2) of Condition 4 of the Old Guard CGL applies to transform the Old Guard CGL to a CGL of an excess degree; and

z)  Old Guard's investigation is ongoing and Old Guard reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Old Guard policy, to the full extent warranted by the facts and permitted by law.

111.  An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Old Guard Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Old Guard Insurance Company owes no duty to defend Bays

Motors, Inc. against the *Kilar* lawsuit under the CGL; 2) awarding Old Guard Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

Count VI: NO DUTY TO DEFEND OR INDEMNIFY ANOSHA JAWAID
UNDER THE OLD GUARD CGL

1-109. Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count VI.

110. For one or more of the following reasons, Old Guard owes no duty to defend or indemnify Anosha Jawaid under the CGL, which Old Guard pleads in the alternative:

a) Anosha Jawaid's alleged liability falls outside the scope of risks and liabilities for which the Old Guard CGL provides coverage;

b) The policy does not identify Anosha Jawaid by name as an insured;

c) The terms Section II, titled "Who Is An Insured," of the CGL, construed together with the common policy declarations, operate to disqualify Anosha Jawaid from having insured status;

d) Anosha Jawaid does not qualify as an insured on the CGL because Anosha Jawaid was not a "volunteer worker" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Office;"

e) Anosha Jawaid does not qualify as an insured on the CGL because Anosha Jawaid was not an "employee" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Office;"

f) Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Anosha Jawaid upon a judgment being entered against John Bays, and therefore Anosha Jawaid does not have insured status;

g) Without prejudice to the foregoing positions, the CGL is not intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Office;"

h) Without prejudice to the foregoing positions, the CGL is not intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

i) Without prejudice to the foregoing positions, the CGL is not intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

j) Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

k) Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence," as the Old Guard CGL uses that term;

l) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Old Guard CGL against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

m) Without prejudice to the forgoing positions, the "expected or intended injury"

exclusion reinforces the proposition that no coverage exists under the Old Guard CGL, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

n)  Without prejudice to the foregoing positions, the underlying complaint does not set forth allegations against Anosha Jawaid constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Old Guard CGL;

o)  Without prejudice to the foregoing positions, Condition 6 of the CGL is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Office;"

p)  Without prejudice to the forgoing positions, Anosha Jawaid cannot establish a condition precedent to coverage under the CGL, where Anosha Jawaid failed to provide timely notice to Old Guard of the incident and the lawsuit;

q)  Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Anosha Jawaid, subsection b.(2) of Condition 4 of the CGL applies to transform the Old Guard CGL to a CGL of an excess degree; and

r)  Old Guard's investigation is ongoing and Old Guard reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Old Guard policy, to the full extent warranted by the facts and permitted by law.

111.    An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Old Guard Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Old Guard Insurance Company owes no duty to defend Anosha Jawaid against the *Kilar* lawsuit under the CGL; 2) awarding Westfield Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

### Count VII: NO DUTY TO DEFEND OR INDEMNIFY JOHN BAYS UNDER THE WESTFIELD CHAMPION CGL OR UMBRELLA

1-109.  Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count VII.

110.    For one or more of the following reasons, Westfield owes no duty to defend or indemnify John Bays, under the Westfield Champion CGL or Umbrella, which Westfield Champion pleads in the alternative:

a)  Neither the Westfield Champion CGL nor the Umbrella was intended to provide coverage for John Bay's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Service," at "1601-1619 W Jefferson St Joliet, IL, 60435;"

b)  The underlying complaint does not allege that John Bay's liability is with respect to the conduct of John Bay's business of "Service" at "1601-1619 W Jefferson St Joliet, IL 60435;"

c)  The terms Section II, titled "Who Is An Insured," of the Westfield Champion CGL or the Umbrella, construed together with the common policy declarations,

operate to limit insured status for John Bays to the business of "Building Owner;"

d) John Bays does not have insured status under the Westfield Champion CGL or Umbrella with respect to the conduct of Bays Motor, Inc.'s business operations, where Bays Motors, Inc. is not an organization that John Bays newly acquired;

e) Neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

f) Neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

g) The natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

h) Entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

i) Letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

j) The natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

k) There are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence" at "1601-1619 W Jefferson St Joliet, IL 60435;

l) "Property damage," as the Westfield Champion CGL or Umbrella uses that term does not mean damage to intangible property or damage to electronic data;

m) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella for John Bays against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

n) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or the Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which neither the Westfield Champion CGL nor the Umbrella was intended to provide coverage;

o) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of

consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

p)   Without prejudice to the forgoing positions, the "electronic data" exclusion of the Westfield Champion CGL or the "electronic data" exclusion of the Umbrella applies to a situation where John Bays actively deleted messages, resulting in loss of data;

q)   The underlying complaint does not set forth allegations against John Bays constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield Champion CGL or Umbrella;

r)   Without prejudice to the foregoing positions, Condition 6 of the Westfield Champion CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to protect against John Bays later misinterpreting that stated business as anything other than "Building Owner;"

s)   Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Westfield Champion CGL or the Umbrella, where John Bays knew of the incident, but failed to provide timely notice to Westfield Champion;

t)   Without prejudice to the forgoing positions, John Bays cannot establish a condition precedent to coverage under the Westfield Champion CGL or the Umbrella, where John Bays' delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

u) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for John Bays, subsection b.(2) of Condition 4 of the Westfield Champion CGL applies to transform the Westfield Champion CGL to a CGL of an excess degree;

v) The schedule of underlying insurance on the Umbrella declarations only identifies the Westfield Champion CGL, policy number 212562Y;

w) The Umbrella does not impose a duty to defend upon Westfield Champion;

x) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Champion Umbrella;

y) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for John Bays, subsection a. of Condition 5 of the Westfield Champion Umbrella applies to transform the Westfield Champion Umbrella to an Umbrella of an excess degree; and

z) Westfield Champion's investigation is ongoing and Westfield reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Westfield Champion policy, to the full extent warranted by the facts and permitted by law.

111.   An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Champion Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Champion Insurance Company owes no duty to defend John Bays against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding

Westfield Champion Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

### Count VIII: NO DUTY TO DEFEND OR INDEMNIFY BAYS MOTORS, INC. UNDER THE WESTFIELD CHAMPION CGL OR UMBRELLA

1-109. Westfield adopts paragraphs 1 through 109 of the general allegations as paragraph 1 through 109 of Count VIII.

110. For one or more of the following reasons, Westfield Champion owes no duty to defend or indemnify Bays Motors, Inc. under the Westfield Champion CGL or Umbrella, which Westfield Champion pleads in the alternative:

a) Bays Motors, Inc.'s alleged liability falls outside the scope of risks and liabilities for which the Westfield Champion CGL provides coverage;

b) The policy does not identify Bays Motors, Inc. by name as an insured;

c) The terms Section II, titled "Who Is An Insured," of the Westfield Champion CGL or the Umbrella, construed together with the common policy declarations, operate to disqualify Bays Motors, Inc. from having insured status;

d) Bays Motors, Inc. does not qualify as an insured on the Westfield Champion CGL or the Umbrella because Bays Motors, Inc. is not an organization that John Bays newly acquired;

e) Bays Motors, Inc. does not qualify as an insured on the Westfield Champion CGL or the Umbrella because Bays Motors, Inc. was not a "volunteer worker," performing duties related to the conduct of John Bays's business of "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

f) Bays Motors, Inc. does not qualify as an insured on the Westfield CGL or the

Umbrella because Bays Motors, Inc. was not an "employee," performing duties related to the conduct of John Bays's business of "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

g) Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Bays Motors, Inc. upon a judgment being entered against John Bays, and therefore Bays Motors, Inc. does not have insured status;

h) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

i) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

j) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

k) Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others

by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

l) Without prejudice to the foregoing positions, entrustment of the 2013 Mercedes to Anosha Jawaid despite knowledge of Anosha Jawaid's history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is not independent of, but inextricably intertwined with Anosha Jawaid's intentional acts of entering the 2013 Mercedes and driving while intoxicated;

m) Without prejudice to the foregoing positions, letting Anosha Jawaid drive the 2013 Mercedes while intoxicated did not cause the collision by itself;

n) Without prejudice to the foregoing positions, the natural and ordinary consequences of actively deleting messages is the destruction of electronic data;

o) Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence" at "1601-1619 W Jefferson St Joliet, IL 60435;"

p) Without prejudice to the foregoing positions, "property damage," as the Westfield Champion CGL or Umbrella uses that term does not mean damage to intangible property or damage to electronic data;

q) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

r) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or criminal acts for which a CGL was not intended to provide coverage;

s) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella, where it is expected or intended that the consequences of entrusting a vehicle to an intoxicated person with a history of consciously disregarding the life and safety of others while she operated motor vehicles; driving while intoxicated; and driving recklessly, is harm or injury;

t) Without prejudice to the forgoing positions, the "electronic data" exclusion of the Westfield Champion CGL or the Umbrella applies to a situation where John Bays actively deleted messages, resulting in loss of data;

u) Without prejudice to the foregoing positions, the underlying complaint does not set forth allegations against Bays Motors, Inc. constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield Champion CGL or Umbrella;

v) Without prejudice to the foregoing positions, Condition 6 of the Westfield Champion CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

w) Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Westfield Champion CGL or Umbrella, where Bays Motors, Inc. failed to provide timely notice of the incident to Westfield Champion;

x) Without prejudice to the forgoing positions, Bays Motors, Inc. cannot establish a condition precedent to coverage under the Westfield Champion CGL or the Umbrella, where Bays Motors, Inc.'s delay in excess of six (6) months in providing notice of the Kilars' written demands concerning their claims was unreasonable as a matter of law;

y) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Bays Motors, Inc., subsection b.(2) of Condition 4 of the Westfield Champion CGL applies to transform the Westfield Champion CGL to a CGL of an excess degree;

z) The schedule of underlying insurance on the Westfield Champion Umbrella declarations only identifies the Westfield Champion CGL, policy number 212562Y;

aa) The Westfield Champion Umbrella does not impose a duty to defend upon Westfield;

bb) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Champion Umbrella;

cc) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Bays Motors, Inc., subsection a. of Condition 5 of the Umbrella applies to transform the Westfield Champion Umbrella to an Umbrella

of an excess degree; and

dd) Westfield Champion's investigation is ongoing and Westfield Champion reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Westfield policy, to the full extent warranted by the facts and permitted by law.

111.  An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Champion Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Champion Insurance Company owes no duty to defend Bays Motors, Inc. against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding Westfield Champion Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

### Count IX: NO DUTY TO DEFEND OR INDEMNIFY ANOSHA JAWAID UNDER THE WESTFIELD CHAMPION CGL OR UMBRELLA

1-109. Westfield Champion adopts paragraphs 1-109 of the general allegations as paragraph 1 through 109 of Count IX.

110.  For one or more of the following reasons, Westfield Champion owes no duty to defend or indemnify Anosha Jawaid under the CGL or Umbrella, which Westfield Champion pleads in the alternative:

a)  Anosha Jawaid's alleged liability falls outside the scope of risks and liabilities for which the Westfield Champion CGL or Umbrella provides coverage;

b)  The policy does not identify Bays Motors, Inc. by name as an insured;

c) The terms Section II, titled "Who Is An Insured," of the Westfield Champion CGL or Umbrella, construed together with the common policy declarations, operate to disqualify Anosha Jawaid from having insured status;

d) Anosha Jawaid does not qualify as an insured on the Westfield Champion CGL or Umbrella because Anosha Jawaid was not a "volunteer worker" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

e) Anosha Jawaid does not qualify as an insured on the Westfield Champion CGL or Umbrella because Anosha Jawaid was not an "employee" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

f) Without prejudice to the foregoing positions, the allegations of the underlying amended complaint do not condition liability against Anosha Jawaid upon a judgment being entered against John Bays, and therefore Anosha Jawaid does not have insured status;

g) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage for the insured's liability for "bodily injury" or "property damage" beyond the business operations identified in the declarations, i.e.., "Service," at "1601-1619 W Jefferson St Joliet, IL 60435;"

h) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage for the insured against liability for "bodily injury" or "property damage" arising out of the ownership,

maintenance, use or entrustment to Anosha Jawaid, of the 2013 Mercedes;

i) Without prejudice to the foregoing positions, neither the Westfield Champion CGL nor the Umbrella is intended to provide coverage against liability for "bodily injury" or "property damage" arising out of Anosha Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated;

j) Without prejudice to the foregoing positions, the natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property;

k) Without prejudice to the foregoing positions, there are no factual allegations within the underlying amended complaint involving an "accident" or "occurrence" at "1601-1619 W Jefferson St Joliet, IL 60435;"

l) Without prejudice to the forgoing positions, the "auto" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella against liability for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by any insured;

m) Without prejudice to the forgoing positions, the "expected or intended injury" exclusion reinforces the proposition that no coverage exists under the Westfield Champion CGL or Umbrella, where the acts of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated, the consequences of which is an auto-accident, are intentional or

criminal acts for which a CGL was not intended to provide coverage;

n) Without prejudice to the foregoing positions, the underlying complaint does not set forth allegations against Anosha Jawaid constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend under the Westfield Champion CGL or Umbrella;

o) Without prejudice to the foregoing positions, Condition 6 of the Westfield Champion CGL or Condition 7 of the Umbrella is an explicit manifestation of the parties' intent to protect against later misinterpreting that stated business as anything other than "Building Owner;"

p) Without prejudice to the forgoing positions, Anosha Jawaid cannot establish a condition precedent to coverage under the Westfield Champion CGL or the Umbrella, where Anosha Jawaid failed to provide timely notice to Westfield Champion of the incident and the lawsuit;

q) Without prejudice to the forgoing positions, in the event that other insurance coverage exists for Anosha Jawaid, subsection b.(2) of Condition 4 of the Westfield CGL applies to transform the Westfield Champion CGL to a CGL of an excess degree;

r) The schedule of underlying insurance on the Westfield Champion Umbrella declarations only identifies the CGL, policy number CWP 5921393;

s) The Umbrella does not impose a duty to defend upon Westfield Champion;

t) Without prejudice to the forgoing positions, the 2013 Mercedes is not a covered auto under the Westfield Champion Umbrella;

u) Without prejudice to the forgoing positions, in the event that other insurance

coverage exists for Anosha Jawaid, subsection a. of Condition 5 of the Umbrella applies to transform the Westfield Champion Umbrella to an Umbrella of an excess degree; and

v) Westfield's investigation is ongoing and Westfield Champion reserves all of its rights to expand on the matters raised herein, and/or to raise additional defenses to coverage under the Westfield Champion policy, to the full extent warranted by the facts and permitted by law.

111.     An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield Champion Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Champion Insurance Company owes no duty to defend Anosha Jawaid against the *Kilar* lawsuit under the CGL or Umbrella; 2) awarding Westfield Champion Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

ESP KREUZER CORES LLP                    RESPECTFULLY SUBMITTED,
400 S. County Farm Road
Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517; our file 1.10056K          Jeffrey S. Barger
jbarger@ekclawfirm.com; lmurphy@ekclawfirm.com           Attorney for Westfield Ins. Co.,
                                                         Old Guard Ins. Co., and
                                                         Westfield Champion Ins. Co.