IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, OLD GUARD INSURANCE COMPANY, and WESTFIELD CHAMPION INSURANCE COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 23-cv-2846 |
| JOHN BAYS, BAYS MOTORS, INC., ANOSHA JAWAID, JOSEPH KILAR, and BARBARA KILAR, | ) | |
| Defendants. | ) | |

WESTFIELD INSURANCE COMPANY'S
MOTION FOR DEFAULT JUDGMENT AGAINST ANOSHA JAWAID

Plaintiff, Westfield Insurance Company, ("Westfield"); pursuant to Federal Rule of Civil Procedure 55(b)(2), for its motion for default judgment against Defendant, Anosha Jawaid, states:

BACKGROUND

"Because '[u]pon default, the well-pled allegations of the complaint relating to liability are taken as true,' . . . the facts recited here are, unless otherwise noted, taken from [Plaintiff's] Complaint." Western World Insurance Company v. Frieden, 1:16-cv-0438-SLD-JEH at *1 (C.D.Ill. July 18, 2018)(*Citing* Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012)). This is a declaratory judgment action concerning whether Westfield has a duty to defend and indemnify Anosha Jawaid, the alleged driver of an automobile, against two state court lawsuits, under a commercial general liability policy, where the underlying amended complaint alleges that Anosha Jawaid, consciously and willfully disregarded the life and safety of others by entering a 2013 Mercedes, located at Busse Woods Trail in Cook County, by driving while intoxicated southbound on I-355 from Busse Trails past mile marker 26, and by striking the rear-end of Joseph Kilar and

Barbara Kilar's 2015 Subaru Forester in DuPage County, just north of Illinois Route 38 (Roosevelt Road) at a high rate of speed. ECF No. 1 at 3¶10, 50-51¶110-111; ECF No. 1-2. Westfield issued a commercial package policy ("the Westfield Policy") to John Bays, for the risk that John Bays would be held liable in tort for "damages" to a third person for accidentally causing "bodily injury," "property damage," or "personal and advertising injury," happening during the effective dates of the policy, in connection with John Bays's business as "Building Owner," of a building located at "3077 W Jefferson St Ste 100." ECF No. 1 at 6-7¶¶33-38 (Dkt. 1-3 at 12, 69).

THE UNDERLYING STATE LAWSUITS

On March 20, 2023, Joseph Kilar and Barbara Kilar, filed an underlying consolidated amended complaint, case nos. 2022 L 006676 (Cook County, IL), and 2022L006668 (Cook County, IL), against multiple defendants, seeking to recover for bodily injuries and property damage allegedly sustained on July 22, 2022, when Anosha Jawaid, consciously and willfully disregarded the life and safety of others by entering a 2013 Mercedes, located at Busse Woods Trail in Cook County, by driving while intoxicated southbound on I-355 from Busse Trails past mile marker 26, and by striking the rear-end of Joseph Kilar and Barbara Kilar's 2015 Subaru Forester in DuPage County, just north of Illinois Route 38 (Roosevelt Road) at a high rate of speed. ECF No. 1 at 3¶10; ECF No. 1-2. The underlying amended complaint alleges that Anosha Jawaid had a history of consciously disregarding the life and safety of others while she operated motor vehicles. ECF No. 1 at 3¶11, ECF No. 1-2 at 14¶113. The underlying amended complaint alleges that on June 22, 2022, Anosha Jawaid operated a vehicle in Romeoville, Illinois while under the influence of alcohol. ECF No. 1 at 3¶12, ECF No. 1-2 at 4¶27, 6¶39, 6¶44. The underlying amended complaint alleges that on July 22, 2022, Bays Motors, Inc. was the owner of the 2013 Mercedes. ECF No. 1 at 3¶13, ECF No. 1-2 at 4¶21. The underlying amended complaint alleges that on July 22, 2022, John Bays was the president and secretary of Bays Motors, Inc. ECF

No. 1 at 3¶14, ECF No. 1-2 at 3¶18. The underlying amended complaint alleges that at all relevant times, John Bays had complete control of the operations of Bays Motors, Inc. ECF No. 1 at 3¶15, ECF No. 1-2 at 31¶215. The underlying amended complaint alleges that at all relevant times, Bays Motors, Inc. was the alter ego of John Bays. ECF No. 1 at 4¶16, ECF No. 1-2 at 31¶216.

The underlying amended complaint alleges that John Bays and Anosha Jawaid had a personal relationship between January of 2022 and the time of the July 22, 2022 incident and on occasion spent the night together at a residence located in Homer Glen, Illinois. ECF No. 1 at 4¶17, ECF No. 1-2 at 4¶¶22-26, 6¶40. The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's prior misconduct. ECF No. 1 at 4¶18, 1-2 at 6¶¶39-45. The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of operating motor vehicles while intoxicated. ECF No. 1 at 4¶19, ECF No. 1-2 at 16¶122. The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of driving motor vehicles recklessly ECF No. 1 at 4¶20, ECF No. 1-2 at 16¶122. The underlying amended complaint alleges that on and before July 22, 2022, Bays Motors, Inc. and John Bays knew of Anosha Jawaid's history of operating motor vehicles in a manner that endangered the lives and safety of the public. ECF No. 1 at 4¶21, ECF No. 1-2 at 16¶122. The underlying amended complaint alleges that despite knowledge of Anosha Jawaid's misconduct, on and before July 22, 2022, Bays Motors, Inc. and John Bays (individually and as an agent of Bays Motors, Inc.) authorized Anosha Jawai to drive the 2013 Mercedes. ECF No. 1 at 4¶22, ECF No. 1-2 at 3¶16, 6¶¶39-45, 14¶117, 16¶122, 27¶198, 28¶203, 31¶214. The underlying amended complaint alleges that on July 22, 2022, prior to the time of the collision, Anosha Jawaid had no fewer than ten (10) phone calls with John Bays. ECF No. 1 at 4¶23, ECF No. 1-2 at 7¶49. The underlying amended

complaint alleges that despite knowledge of Anosha Jawaid's misconduct, on and before July 22, 2022, John Bays (individually and as an agent of Bays Motors, Inc.): a) failed to instruct Anosha Jawaid to not drive after drinking; b) failed to arrange for Anosha Jawaid to take a cab or rideshare to her next destination; c) failed to pick up Anosha Jawaid from the location where she was intoxicated; and/or d) failed to intervene in Anosha Jawaid's plan to drive while intoxicated. ECF No. 1 at 5¶24, ECF No. 1-2 at 6¶¶39-45, 14¶117, 16¶122, 18¶128, 27¶198, 28¶203, 30¶209.

The underlying amended complaint further alleges that on the night of July 22, 2022, John Bays had notice that Anosha Jawaid caused the crash. ECF No. 1 at 5¶25, ECF No. 1-2 at 19¶140. The underlying amended complaint alleges that on the night of July 22, 2022, John Byas knew that litigation would ensue for losses arising out of the crash. ECF No. 1 at 5¶26, ECF No. 1-2 19¶¶141-142. The underlying amended complaint alleges that on and after July 22, 2022, John Bays owed a duty to preserve evidence for the ensuing litigation. ECF No. 1 at 5¶27, ECF No. 1-2 at 20¶¶141-147. The underlying amended complaint alleges that shortly after the crash, Plaintiffs served John Bays with letters demanding preservation of evidence relating to the July 22, 2022 DUI crash including "*any and all messages, text messages, emails, call logs, voice messages, what's app messages, signal messages, and/or any other correspondence or messages with Anosha Jawaid from July 22, 2022 through present, any and all bar receipts, tabs, or other invoices from restaurants and/or bars on July 22, 2022, any and/or all photographs, videos, social media posts depicting you or Anosha Jawaid on July 22, 2022, and/or any other tangible things that in anyway relate to the Anosha Jawaid's whereabouts, conduct, intoxication, and/or ability to operate a vehicle on July 22, 2022."* ECF No. 1 at 5¶28, ECF No. 1-2 at 8¶64)(The underlying amended complaint adding emphasis.). The underlying amended complaint alleges that the same letter demanded John Bays preserve evidence relating to the June 21, 2022 crash including "any

and all text messages, emails, whatsapp messages, signal messages, and/or any other communications that in anyway reference Anosha Jawaid's recent charges, arrest, and case regarding her June 22, 2022 operation of a vehicle while allegedly under the influence in Will County." ECF No. 1 at 6¶29, ECF No. 1-2 at 8¶65. The underlying amended complaint alleges that within one (1) month the crash, Joseph and Barbara Kilar caused John Bays to be served summons and an underlying complaint that identified John Bays as a Respondent in Discovery. ECF No. 1 at 6¶30, ECF No. 1-2 at 8¶66, 20¶144. The underlying amended complaint alleges that John Bays actively deleted messages that were the subject of preservation requests. ECF No. 1 at 6¶31, ECF No. 1-2 at 8¶68). The underlying amended complaint alleges that John Bays, as a respondent in discovery, produced nothing. ECF No. 1 at 6¶32, ECF No. 1-2 at 20¶145.

On April 13, 2023, Joseph and Barbara Kilar filed an underlying second amended complaint. Plaintiffs contemporaneously filed a copy of the underlying second amended complaint to be filed as ECF No. 40-1. The factual allegations of the underlying second amended complaint are substantially the same as the factual allegations of the underling amended complaint. ECF No. 40-1. The underlying second amended complaint changed "Bond Drug Company of Illinois, LLC d/b/a Walgreens #9506" to "Walgreens Co. d/b/a Walgreens #9506." ECF No. 40-1.

THE DECLARATORY JUDGMENT SUIT

On March 16, 2023, Westfield; Old Guard; and Westfield Champion first received notice of the incident on March 16, 2023. ECF No. 1 at 40¶108. On March 16, 2023, Westfield; Old Guard; and Westfield Champion first received notice that the Kilars made written demands in connection with their claims. ECF No. 1 at 40¶109. On May 5, 2023, Westfield; Old Guard; and Westfield Champion filed the complaint for declaratory judgment. ECF No. 1. On June 23, 2023, Jennifer O'Rourke served summons and the complaint for declaratory judgment upon Anosha Jawaid by leaving a copy of the process at her usual place of abode, 15100 West 159th Street,

Homer Glen, Illinois 60491, with John Bays, (Relationship) Co-Occupant, a person residing therein who is above the age of 13 years. ECF No. 8, ECF No. 36-1 at 2¶4. O'Rourke informed John Bays of the contents of the process. ECF No. 8, ECF No. 36-1 at 2¶4. John Bays confirmed co-occupancy with Anosha Jawaid. ECF No. 8, ECF No. 36-1 at 2¶4. O'Rourke further mailed a copy of the process in a sealed envelope with postage paid addressed to the defendant at 15100 West 159th Street, Homer Glen, Illinois 60491, on June 22, 2023. ECF No. 8, ECF No. 36-1 at 2¶4. Anosha Jawaid's appearance was due by July 14, 2023. On January 25, 2024, the Court entered an order of Default against Anosha Jawaid. ECF No. 38.

## ARGUMENT

"'A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in [a] complaint.'" Frieden, 1:16-cv-0438-SLD-JEH at *12 (*Quoting* e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007)). "A court has the authority to enter declaratory default judgments." Id. (*Citing* Tygris Asset Fin., Inc. v. Szollas, No. 09 C 4488, 2010 WL 2266432, at *6 (N.D. Ill. June 7, 2010)). "Upon a party's default, the complaint's well-pleaded allegations as to liability are deemed admitted." Id. (*Citing* e360 Insight, 500 F.3d at 602.). "But even after default has been entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Id. (*Quoting* PNC Bank, Nat'l Assoc. v. Michael A. Nordwall, Ltd., 1:13-cv-01469-SLD-JAG, 2014 WL 12698572, at *1 (C.D. Ill. Nov. 19, 2014))(quotation marks omitted).

"In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." Crum and Forster Managers Corp. v. Resolution Trust Corp., 156 Ill.2d 384, 620 N.E.2d 1073, 1078 (1993). Courts "construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the

purposes of the entire contract." Westfield Ins. Co. v. Vandenberg, 796 F.3d 773, 778-779 (7th Cir. 2015). Provisions in the common policy declarations of an insurance contract are intended to limit the scope of coverage. Id. "A policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement." Id. Because a commercial insurance policy is manifestly designed to cover only the business identified in the common policy declarations, the policy does not need to conjure up and expressly exclude any and all activities that the named insured might engage. Id. "Such a speculative exercise in hypotheticals would be nonsensical." Id.

"[F]actual allegations certainly are important to a coverage determination, but only if those allegations are directed to a theory of recovery." Westfield Ins. Co. v. West Van Buren, LLC, 2016 IL App (1st) 140862, ¶20, 59 N.E.3d 877, 885. "Tangential allegations of fact . . . do not potentially bring the Underlying Complaint within the Policy's coverage." Professional Solution Ins. Co. v. Giolas, 297 F.Supp.3d 805, 811 (N.D.Ill. 2017). "[Courts] do not believe a free-standing reference to a fact, that is not attached to any particular theory of recovery or particular party in the complaint, can trigger a duty to defend." Id.; American Family Mut. Ins. Co. v. Sinha, 2022 IL App (1st) 211201-U, ¶¶36-39, 2022 WL 4355669; William J. Templeman Co. v. Liberty Mut. Ins. Co., 316 Ill.App.3d 379, 735 N.E.2d 699, 676 (1st Dist. 2000)(*Explaining* that coverage depends on the cause of action claiming a right to recovery). "[I]t is 'the actual complaint, not some hypothetical version, that must be considered.'" Allied Property & Casualty Ins. Co. v. Metro North Condominium Assoc., 850 F.3d 844, 848 n.4 (7th Cir. 2017). "Speculative possibilities do not give rise to a duty to defend." Lemko Corp. v. Federal Ins. Co., 70 F.Supp.3d 905, 917-19 (N.D.Ill. 2014). "The duty to defend applies only to facts that are explicitly alleged." American Mutual Insurance Co. v. Microplastics, Inc., 622 F.3d 806, 812 (7th Cir. 2010).

In Ohio Security Insurance Company v. Truck Tire Sales Inc., Julicia Lee filed a complaint against Truck Tire Sales, Inc., Truck Tire's employee, and the City, seeking to recover for bodily fatal injuries that her minor daughter sustained when Truck Tire's employee allegedly struck her minor daughter, while driving Truck Tire's tractor, while performing weed-cutting work. 425 F.Supp.3d 982, 987 (N.D.Ill. 2019). Truck Tire operated multiple independent businesses, including tire sales and servicing; weed cutting; and water main transportation. Id. at 1001. Ohio Security issued a commercial general liability policy to Truck Tire. Id. at 985-986. The Court read the coverage form and the declarations together as indicating that Truck Tire's business was "Tire Dealers." Id. at 995-996. The Court noted that "[t]here is no mention in the policy of weed-cutting operations." Id. The Court quoted Crum & Forster, 156 Ill.2d at 391, for the proposition that "courts must consider the 'subject matter that is insured and the purposes of the entire contract.'" Id. The Court objectively reasoned that the risk of striking pedestrians with a tractor during the course of weed-cutting work was not inherent in the practice of selling and servicing tires. Id. The Court objectively reasoned that "[t]o construe those policies as covering the *Lee* claim "would expand the coverage beyond what was contracted for by the parties." Id. at 1003. The Court rejected Truck Tire's that the policy provided coverage for any and all liabilities unless they were explicitly excluded. Id. at 996. Accordingly, the Court held that Ohio security had no duty to defend or indemnify Truck Tire or any other defendant in the *Lee* action. Id. at 1003.

In Sears, Roebuck and Co. v. Acceptance Ins. Co., Rosa Kresin filed a complaint against Sears and a driver by the name of Alfredo Jijon, seeking to recover for bodily injuries sustained when the driver struck Kresin with a van while backing out of a Sears Automotive Center located at the Charlestown Mall, in St. Charles. 342 Ill.App.3d 167, 169, 793 N.E.2d 736, 737-738 (1st Dist. 2003). As of the time of the accident, the driver had already removed the van from its parking place, with

the bay of the automotive center and traveled in reverse for 34 feet across an apron until he came to the perimeter road. Id. at 743. The driver then stopped, waited for traffic, and then again started to move in reverse, striking Kresin. Id. Kresin obtained a $15.7 million judgment against Sears and the driver. Id. at 737-738. Jamesport Associates was the owner of the mall. Id. One of Jamesport's affiliates, a company by the name of Charwil Associates, was the property manager for the mall. Id. Sears filed a third party complaint against Charwil. Id. Acceptance issued a commercial general liability policy to Jamesport. Id. Sears filed an action seeking a declaration that Acceptance owed a duty to defend Sears against the Kresin lawsuit. Id. The First District quoted Crum & Forster, 156 Ill.2d at 391, for the proposition that courts "construe the policy as a whole, while taking into account 'the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract.'" Id. at 739. The First District noted that "[t]he instant case does not involve a motor vehicle liability policy. Rather, it involves a comprehensive general liability (CGL) policy purchased by Jamesport to insure against injuries occurring in the common areas of the mall." Id. An automobile exclusion within the CGL coverage form reinforced the proposition that the risk insured was for tort liability for bodily injury occurring in the common areas of the mall. Id. at 739. In the words of the First District:

> Pursuant to the terms of the policy at issue, coverage did not extend under the automobile exclusion to:
>
> ''Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.''
>
> The policy provided an exception to the automobile exclusion for: "Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured * * *.'

Id. Sears argued that parking also includes "unparking." Id. at 742. The First District defined

"unpark" as "to remove from a parking space." Id. at 743. The First District ruled that no factual basis existed to trigger coverage for parking an auto on, or on the ways next to, the common areas of the mall, located. Id. at 176. Summary judgment in favor of Acceptance was appropriate. Id.

In this case, Jawaid's alleged liability falls outside the scope of risks and liabilities for which the Westfield CGL or Umbrella provides coverage. The policy does not identify Jawaid by name as an insured. The terms Section II, titled "Who Is An Insured," of the Westfield CGL or Umbrella, construed together with the common policy declarations, operate to disqualify Jawaid from having insured status. Jawaid does not qualify as an insured on the Westfield CGL or Umbrella because Jawaid was not a "volunteer worker" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Building Owner." Jawaid does not qualify as an insured on the Westfield CGL or Umbrella because Jawaid was not an "employee" of John Bays, the individual, and performing duties related to the conduct of John Bays's business of "Building Owner," of the building located at "3077 W Jefferson St Ste 100." Furthermore, the allegations of the underlying amended complaint do not condition liability against Jawaid upon a judgment being entered against John Bays.

Moreover, the instant case does not involve a motor vehicle liability policy. Rather, it involves a CGL policy and an Umbrella policy that John Bays purchased to insure against that John Bays would be held liable in tort for "damages" to a third person for accidentally causing "bodily injury," "property damage," or "personal and advertising injury," happening during the effective dates of the policy, in connection with John Bays's business as "Building Owner," of a building located at "3077 W Jefferson St Ste 100." An automobile exclusion within the CGL coverage form reinforces the proposition that the risk insured is for tort liability for bodily injury occurring in connection with John Bays's business as "Building Owner," of the building located at "3077 W

Jefferson St Ste 100." Pursuant to the terms of the policy at issue, coverage does not extend under the automobile exclusion to "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.'" ECF No. 1-3 at 75. The policy provided an exception to the automobile exclusion for: "Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured . . .'" ECF No. 1-3 at 75. The factual allegations of the underlying complaints involve an incident that happened approximately thirty (30) miles away from 3077 W Jefferson St Ste 100. ECF No. 1 at 3¶10. No factual basis exists to establish that, at the time of the incident, Jawaid was parking an auto on, or the ways next to, the building located at 3077 W Jefferson St Ste 100. In addition, the underlying complaint alleges that Bays Motors, Inc. was the owner of the Mercedes. ECF No. 1-2 at 6¶41; ECF No. 40-1 at 6¶41.

Factual allegations of negligent entrustment of a vehicle resulting in "bodily injury" or "property damage" are not within the scope of coverage that a commercial general liability policy was intended to insure against. Erie Ins. Exchange v. Aral Construction Corp., 2022 IL App (1st) 210628, ¶33, 225 N.E.3d 41, 51 (*Citing* Oakley Transport, Inc. v. Zurich Insurance Co., 271 Ill.App.3d 716, 726-727, 648 N.E.2d 1099, 1106-1107 (1st Dist. 1995)).

In this case, the allegation of Jawaid's reckless or negligent driving predominate. The allegations of negligent entrustment are not independent of, but inextricably intertwined with, Jawaid's use of the auto.

Where some injury or harm is the "natural and ordinary consequences" of the alleged acts, the alleged acts cannot be said to be "accidental" or an "occurrence." Lemko, 70 F.Supp.3d at 916 (*Quoting* Stoneridge Development Co. v. Essex Ins. Co., 382 Ill.App.3d 731, 751, 888 N.E.2d 633,

652 (2d Dist. 2008), for the proposition that even "if the person performing the act did not intend or expect the result, if the result is the rational and probable consequence of the act, or, stated differently, the natural and ordinary consequence of the act, it is not an accident.").

The Third District in Aetna Casualty v. O'Rourke Bros., Inc. objectively reasoned that the economic injuries that O'Rourke's customers suffered in connection with the bargained for benefit of a credit card purchasing program for financing the purchase of satellite systems "followed naturally from O'Rourke's defrauding scheme" and, therefore, "these injuries are not recoverable under the terms of the insurance policy." 333 Ill.App.3d 871, 879, 776 N.E.2d 588, 595-596 (3d Dist. 2002). The Third District objectively reasoned, however, that "[b]ecause Aetna failed to establish that the emotional injuries were the *natural and ordinary consequences of O'Rourke's actions*, Aetna has a duty to defend under the [commercial excess liability] policy." Id. (Emphasis added). Some of the plaintiffs also claimed that they suffered damage to credit or a fear of damage to credit because of O'Rourke's actions. Id. at 591-592. Whether an occurrence happened was an issue of law for the court. Id. Whether an occurrence happened did not depend upon the insured's subjective understanding that injuries were the "natural and ordinary consequences" of its acts.

On August 30, 2023, the First District issued a decision in Continental Casualty Company v. 401 North Wabash Venture, LLC, 2023 IL App (1st) 221625, 2023 WL 5599927 The underlying plaintiff, State of Illinois, filed a lawsuit against CAN's named insured, 401 North Wabash, alleging that 401 North Wabash improperly operated a cooling water intake structure at its property in violation of the applicable statutory and regulatory requirements, that discharged heated effluent into the Chicago River. Id. at ¶1. Multiple intervening plaintiffs, including Sierra Club, filed intervening complaints, alleging that 401 North Wabash's conduct

violated the Clean Water Act and constituted a public nuisance that harmed fish and other aquatic life. Id. at ¶14. 401 North Wabash contended that the relevant inquiry to establish that an "occurrence" happened was whether 401 North Wabash subjectively expected or intended for its withdrawal of river water to cause harm to fish and other aquatic life. Id. at ¶28. The insurers, by contrast, maintained that the proper focus was on the property's intentional operation of its water intake structure in the absence of a valid NPDES permit. Id. The First District explained that "[t]he natural and ordinary consequences of an act do not constitute an accident." Id. at ¶27. The First District agreed with the insurers that the conduct at issue was the property's operation of its system generally, not the ultimate results of that operation. Id. at ¶28. The First District objectively reasoned that the alleged conduct did not constitute an "occurrence" under the terms of the insurance policies. Id. at ¶¶31-32. The First District noted that "401 North Wabash makes much of the fact that the consideration of whether an injury was expected or intended is viewed from the standpoint of the insured." Id. The First District objectively reasoned, however, that: "It is clear, however, that 401 North Wabash was aware that impingement and entrainment were 'natural and ordinary consequences' (internal quotation marks omitted) (*id.*) of operating its cooling water intake structure." Id. The First District objectively reasoned that: "The fact that 401 North Wabash may not have known the extent of any such impingement or entrainment, due to its lack of study on the issue, does not mean that 401 North Wabash was unaware that operation of its cooling water intake structure would have *some* impact on the fish and other wildlife in the river." Id. (The First District adding emphasis.).

In this case, there are no factual allegations within the underlying amended complaints involving an "accident" or "occurrence," as the Westfield CGL or Umbrella uses that term. Neither the Westfield CGL nor the Umbrella is intended to provide coverage against liability for

"bodily injury" or "property damage" arising out of Jawaid consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated. The natural and ordinary consequences of consciously and willfully disregarding the life and safety of others by entering a 2013 Mercedes and driving while intoxicated is that the person will cause bodily injury or damage to another's property. Even if hypothetically Jawaid did not know the extent of harm or injury that would ensue from their acts, that does not mean that Jawaid was objectively unaware that the conduct would result in some harm or injury.

In addition, the natural and ordinary consequences of the intentional act of deleting text messages and voicemails is the destruction of electronic data. Such a situation does not involve an "occurrence" as that term is used in commercial general liability policies. Such a situation does not constitute "bodily injury" or "property damage." The damage under a claim for spoliation is the inability to prove an underlying action, which does not fall within the plain and ordinary meaning of the term "bodily injury." Humana Workers Compensation Servies v. Home Emergency Services, Inc., 842 So.2d 778, 781 (Fl. 2003)(*Citing* Fremont Casualty Ins. Co. v. Ace-Chicago Great Dane Corp., 317 Ill.App.3d 67, 75, 739 N.E.2d 85, 91 (1st Dist. 2000)). Moreover, "property damage," as the liability policy uses that term does not mean damage to intangible property or damage to electronic data.

Even if hypothetically the damage to text messages or voicemails constituted damage to tangible personal property, the exclusions for expected or intended injury; damage to personal property within the care, custody or control of the insured; damages arising out of the loss of use of electronic data; and the auto exclusion reinforce the proposition that the commercial general liability policy was not intended to provide coverage for the liability that the proposed amended complaint alleges. Nationwide Ins. Co. v. Hentz, 11-cv-618-JPG-PMF, 2012 WL 734193

(S.D.Ill. March 6, 2012)(*Holding* that the "in the care of the insured" exclusion applied to a situation where the insured failed to prevent a third party from criminally stealing a CD-ROM that was located within the insured's car, resulting in loss of data.); Nelson v. Navigator Ins. Co., 12-cv-1620-PHX-SMM, 2013 WL 5314361 (D. Ariz. Sept. 20, 2013)(*Holding* that the underlying allegations of spoliation, whether negligent or intentional, did not fall within the scope of coverage under a general liability policy, the damage was to intangible property rather than any injury to person or property, as the liability policy used the terms person or property.).

WHEREFORE, Plaintiff, Westfield Insurance Company, prays that this Honorable Court enter an order granting a default judgment against Defendant Anosha Jawaid.

RESPECTFULLY SUBMITTED,

Jeffrey S. Barger

ESP KREUZER CORES LLP
400 S. County Farm Road
Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517; our file 1.10332K; jbarger@ekclawfirm.com

VERIFICATION BY CERTIFICATION

Pursuant to 28 U.S. C. § 1746, the undersigned certifies under penalty of perjury that the facts with respect to service of summons upon Anosha Jawaid and the time for Anosha Jawaid to file an appearance are true and correct.

I also hereby certify that on February 13, 2024, I electronically filed the foregoing Motion for Default Judgment with the Clerk of the Court using the CM/ECF system. CM/ECF will send notification to all attorneys of record.

Jeffrey S. Barger